UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

MICHAEL ROY WOOD,

    Petitioner,

v.                                        Case No. 3:15cv241-RV-CJK

UNITED STATES OF AMERICA,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is Michael Roy Wood's amended petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. (Docs. 5, 6). Petitioner seeks an order requiring the Bureau of Prisons ("BOP") to run his federal sentences concurrently with the state sentence he is currently serving. The government moved to dismiss the petition (doc. 43) and petitioner responded in opposition (docs. 44, 48). The matter is referred to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C § 636 and N.D. Fla. Loc. R. 72.2(B). After reviewing the parties' submissions, the undersigned concludes petitioner has not exhausted his administrative remedies and the petition should be dismissed without prejudice.

## BACKGROUND AND PROCEDURAL HISTORY[1]

Petitioner is currently confined in the Florida Department of Corrections ("FDOC") at Tomoka Correctional Institution. He committed a series of robberies across several states in 2007. On October 15, 2007, state officials in Florida arrested petitioner for two counts of robbery and took him to the Pinellas County Jail. Petitioner was temporarily released into federal custody on February 29, 2008, to face a federal bank robbery charge in North Carolina. On June 30, 2008, petitioner pleaded guilty to violating 18 U.S.C. § 2113(a) in the U.S. District Court for the Western District of North Carolina. As a result, petitioner was sentenced to 180 months' imprisonment on January 29, 2009. The judgment was silent as to the running of the sentence in relation to any future sentences.

Federal authorities returned petitioner to the Pinellas County Jail on February 23, 2009. On June 2, 2010, petitioner pleaded guilty to two state robbery charges in Pinellas County. Petitioner was sentenced to 20 years' imprisonment on each charge. The two state sentences were ordered to run concurrent to each other and to the "Federal Sentence Currently Serving." Petitioner, however, had yet to begin to serve the federal sentence from North Carolina, because Florida had, since the

---

[1] The relevant facts are drawn from the declaration of Jeffrey Johnson, a Correctional Programs Specialist at the BOP's Designation and Sentence Computation Center (doc. 43-1), and the affidavit of Linda Santana, a Correctional Services Assistant Consultant in the Office of Institutions, Bureau of Admission and Release of the FDOC (doc. 17).

October, 2007 arrest, maintained primary custody of him.[2] On June 17, 2010, petitioner entered the FDOC to begin serving the state sentence.

On August 2, 2010, petitioner was again temporarily transferred from state to federal custody for prosecution on a federal robbery charge in Georgia. On November 15, 2010, petitioner pleaded guilty to violating 18 U.S.C. § 2113(a) in the U.S. District Court for the Southern District of Georgia. On February 17, 2011, petitioner was sentenced to 180 months' imprisonment on the second federal conviction. The judge in Georgia ordered 120 months of the sentence to run concurrent to petitioner's state sentence and the North Carolina federal sentence. The judge ordered the remaining 60 months to run consecutive to petitioner's previously imposed state and federal sentences. Petitioner was returned to FDOC custody on August 24, 2011. He has remained in state custody since that date.

While serving the state sentence, petitioner wrote to the BOP and requested a copy of his federal sentence computation. The BOP interpreted petitioner's correspondence as a *nunc pro tunc* request, which, if granted, would result in petitioner receiving credit toward his federal sentence for time served in state prison. Before making its decision, the BOP contacted the Western District of North

---

[2] *See United States v. Williams*, 601 F. App'x 685, 688 (10th Cir. 2015) ("[A] prisoner held in primary state custody may be temporarily transferred to federal custody based on a writ of habeas corpus ad prosequendum, and any federal sentence imposed while in temporary federal custody would not normally commence until the state relinquishes its primary custody of the prisoner.").

Carolina to determine the sentencing court's position on the request; the BOP did not receive a response. After considering the factors in 18 U.S.C. § 3621(b), the BOP determined a *nunc pro tunc* designation was not appropriate.

Thereafter, petitioner filed the instant habeas proceeding. Petitioner claims his plea agreements are not being honored because his state sentence is not running concurrent to his federal sentences. (Doc. 6). He claims he pleaded guilty to the various state and federal charges with the expectation he would spend a maximum of 25 years in prison. As the three sentences are currently arranged, however, petitioner potentially faces 40 years of confinement. As relief, he requests an order: (1) directing the BOP to run his federal sentences concurrent to the state sentence (with the exception of the portion of the Georgia federal sentence ordered to run consecutively); or (2) vacating the federal sentences "to be restructured, as they violate the terms of the plea agreement." (Doc. 6, p. 7).

The court initially directed service of the amended petition on the Secretary of the FDOC, the Attorney General of the State of Florida, and the Warden of Blackwater River Correctional Facility—petitioner's then current place of confinement. (Doc. 10). The FDOC responded to the petition on October 2, 2015, asserting that "[a]s far as Florida has any power in the matter, the [FDOC] IS running THE FLORIDA sentence (the Pinellas County sentence) concurrently with the only federal sentence in existence at the time of the issuance of the Pinellas County

sentence (as far as DOC can tell) - the federal sentence out of North Carolina." (Doc. 17, p. 8). Nevertheless, the FDOC correctly acknowledged "Florida cannot compel federal prison authorities to run either of the federal sentences in any particular manner."[3] (*Id.*, p. 7-8). The FDOC also suggested the petition should have been served on federal rather than state officials. (*Id.*).

Based on the confusion surrounding the terms of petitioner's plea agreements and the execution of petitioner's state and federal sentences, the undersigned appointed the Federal Public Defender to represent petitioner. (Doc. 19). With the assistance of counsel, petitioner asked the North Carolina District Court to make a recommendation to the BOP that the FDOC be designated as the place for service of the federal sentence *nunc pro tunc* to the date the federal sentence was imposed. The North Carolina federal court (a successor judge to the sentencing judge) declined to make the recommendation but indicated it did not oppose petitioner's *nunc pro tunc* request.

With the additional input from the North Carolina court, petitioner asked the BOP to review his *nunc pro tunc* request a second time. The BOP denied the second request based on: (1) petitioner's criminal history; (2) his extensive disciplinary

---

[3] *See Barden v. Keohane*, 921 F.2d 476, 478 n.4 (3d Cir. 1990) (recognizing that when a state has primary custody of a defendant, "neither the federal courts nor the [BOP] are bound in any way by the state court's direction that the state and federal sentences run concurrently").

Case No. 3:15cv241-RV-CJK

conduct while incarcerated in the FDOC; and (3) the unrelated nature of the conduct underlying the state and federal offenses.

Petitioner subsequently asked for judicial review of the BOP's denial of the *nunc pro tunc* request. (Doc. 37). Accordingly, the court substituted the United States of America as the respondent and ordered the government to respond to the amended petition. (Doc. 38). The government moved to dismiss the petition, arguing "this case is not ripe for federal habeas review" because petitioner "has not exhausted his BOP administrative remedies and cannot do so until he is in federal custody." (Doc. 43).

Petitioner's counsel responded to the government's motion to dismiss, claiming petitioner's multiple requests for a *nunc pro tunc* designation satisfy the exhaustion requirement (and asking again when he enters federal custody would be futile). (Doc. 44). Petitioner also filed a *pro se* response to the motion to dismiss and requests its consideration. (Docs. 48, 49).

## DISCUSSION

"[C]hallenges to the execution of a sentence, rather than the validity of the sentence itself, are properly brought under § 2241." *Antonelli v. Warden, U.S.P. Atlanta*, 542 F.3d 1348, 1352 (11th Cir. 2008). A § 2241 petitioner must exhaust his administrative remedies before he can obtain habeas relief, though the exhaustion

requirement is not jurisdictional. *See Santiago-Lugo v. Warden*, 785 F.3d 467, 474-75 (11th Cir. 2015).

Petitioner claims his two requests for a *nunc pro tunc* designation satisfy the exhaustion requirement. He asserts making another such request after arriving in federal custody would be futile. The government disagrees; it argues that when petitioner is taken into federal custody, "he will be able to access the BOP's administrative remedy system and exhaust his administrative remedies regarding his sentence computation."

The undersigned agrees with the government. After petitioner enters federal custody, he may challenge the denial of his *nunc pro tunc* request through the BOP's Administrative Remedy Program.[4] District courts encountering similar factual situations have concluded a petitioner's inability to access the BOP's Administrative Remedy Program before entering federal custody does not justify waiving the exhaustion requirement. *See May v. United States*, Civil Action No. 2:13cv39-KS-MTP, 2013 WL 961892 at *2 (S.D. Miss. Mar. 12, 2013) ("The Court recognizes

---

[4] *See Nichols v. Warden, FCC Coleman-Low*, 458 F. App'x 844, 844-45 (11th Cir. 2012) ("Pursuant to the BOP's Administrative Remedy Program, an inmate can seek formal review of any issue relating to an aspect of his confinement. 28 C.F.R. § 542.10. First, the inmate must file a written request with the warden at the institution of his confinement within 20 days of the date on which the basis for his request occurred. *Id.* § 542.14. If the warden denies the prisoner's request, the prisoner then has 20 days from the denial to appeal to the BOP's Regional Director. *Id.* § 542.15(a). If the inmate is not satisfied with the Regional Director's response, the inmate may then appeal to the BOP General Counsel at the BOP's Central Office within 30 days of the Regional Director's signed response. *Id.* The appeal to the General Counsel is the final step in the Administrative Remedy Program. *Id.*").

that the Petitioner *may* not be able to proceed through the BOP administrative review process until he is physically within a BOP facility; however, this does not provide extraordinary circumstances waiving exhaustion."); *Brown v. United States*, No. 2:09cv172, 2009 WL 6962529 at *2 (S.D.W.Va. Nov. 18, 2009) (dismissing habeas petition by inmate in state custody because he "must exhaust his administrative remedies concerning the calculation of his federal sentence and the denial of his request for a *nunc pro tunc* designation before he may have the merits of his section 2241 petition reviewed"), *report and recommendation adopted*, 2010 WL 4064808 (S.D.W.Va. Oct. 15, 2010); *Miller v. Burt*, C.A. No. 3:06-2755-TLW-JRM, 2007 WL 2428542 at *4 (D.S.C. Aug. 21, 2007) ("[I]f the petitioner cannot exhaust his claim until he is physically in a BOP facility, he will have to wait until then to begin the exhaustion process."); *Kegley v. United States*, No. 01–CR–62–C–01, 2003 WL 23164514 at *1 (W.D. Wis. Aug. 4, 2003) ("If petitioner cannot exhaust his remedies until he is actually in federal custody, he will have to wait until he has served his state sentence and has been transferred to federal custody to begin the exhaustion process."). Furthermore, the federal court in Georgia ordered 60 months of petitioner's sentence from that jurisdiction to run consecutive to both his state sentence and the federal sentence from North Carolina. Because petitioner must serve at least 60 months in federal custody, he will not be prejudiced by being

required to complete the BOP's Administrative Remedy Program before seeking judicial review of his federal sentence computation.[5]

Accordingly, it is respectfully RECOMMENDED:

1.	That respondent's motion to dismiss (doc. 43) be GRANTED and the amended petition for writ of habeas corpus (docs. 5, 6) be DISMISSED WITHOUT PREJUDICE.

2.	That the clerk be directed to close the file.

At Pensacola, Florida, this 2nd day of November, 2017.

*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* U.S. Ct. of App. 11th Cir. Rule 3-1; 28 U.S.C. § 636.

---

[5] Petitioner also suggests he would not have pleaded guilty to the state charges in Florida or the federal charges in Georgia had he known he would receive, in total, more than 25 years' imprisonment.  Challenges to the validity of those pleas cannot be raised in this § 2241 petition.  Such claims should be raised in state court, a § 2254 petition, or a § 2255 motion to vacate.